H. J. NeSmith *v.* Martha Patterson.

**Ejectment — Plaintiff's Title — Evidence.**

Plaintiff in an ejectment suit must show title in himself, and a verdict for plaintiff will be reversed if the evidence fails to show title to the land sued for was in the plaintiff.[1]

Ejectment by appellee against appellant. From a verdict and judgment for plaintiff, defendant appeals.

On the trial plaintiff introduced a deed to one Mrs. M. D. NeSmith, and claimed as her heir, showing that she died several

---

[1] In an action of ejectment, the plaintiff must show his title good, as against the whole world, to entitle him to recover. Johnson *v.* Helm, 1 Miss. Dec. 170, and cases cited in notes.

The plaintiff must have a legal title at the commencement of the suit; an equitable title then, which afterward, and before trial, ripened into a legal title, will not do. Heard *v.* Baird, 40 Miss. 793.

His legal title must also continue till the trial. Torrance *v.* Betsy, 30 Miss. 129.

A complete and perfect equitable title will not do, though the beneficiary of a satisfied trust may defend as against the trustee holding the dry, naked legal title; yet the beneficiary cannot maintain ejectment on such a title. Heard *v.* Baird, 40 Miss. 793; Thompson *v.* Wheatley, 5 S. & M. 499.

While, as a general rule, a plaintiff in ejectment must recover solely on the strength of his own title against a mere intruder, he is not required to derange title, but may recover upon the strength of the former possession, from which he has been wrongfully ousted. Hicks *v.* Steigleman, 49 Miss. 377; Kerr *v.* Farish, 52 Miss. 101; Lum *v.* Reed, 53 Miss. 73.

One who has recovered in ejectment against a tenant, the landlord having no notice, and who enters by attornment of the tenant, may hold possession

years prior to the bringing of the suit. The only witness who testified for plaintiff as to her kinship to M. D. NeSmith was her husband, who testified that his wife was the niece of Mrs. Ne-Smith, deceased; that he heard his wife and Mrs. NeSmith say that she had a brother, King, and a sister, who was dead; that his wife's name was Knox before she was warried and was a niece of Mrs. NeSmith. On cross-examination he said his wife was the daughter of King, the brother of Mrs. NeSmith; that he did not know this of his own knowledge, but had been told so. There was no other evidence of plaintiff's relationship to Mrs. NeSmith. Defendant's motion for a new trial was overruled, and he appeals.

APPEALED from Circuit Court, Holmes county, C. H. CAMP-BELL, Judge.

Reversed, October 23, 1882.

*Attorney for appellant, Gwin & Noel.*

*Attorneys for appellee, Hooker & Wilson.*

if he has good title; otherwise he is a mere intruder, against whom the landlord may recover in ejectment by merely showing his possession and the ouster. Lum *v.* Reed, 53 Miss. 73.

Unless the intruder has held possession sufficiently long to confer title. Kerr *v.* Farish, 52 Miss. 101.

To defeat a recovery on a prior possession because of abandonment, the abandonment must be without any intention of returning. In such case where plaintiff claims under deeds given for a valuable consideration, his intention to abandon will not be presumed. Hicks *v.* Steigleman, 49 Miss. 377.

And if plaintiff's claim as the heirs of one who died in possession of land, proof of such possession is *prima facie* evidence of seizin in fee, and entitles them to recover against a mere intruder, or one claiming under a title shown to be void. Dingy *v.* Paxton, 60 Miss. 1038.

Ejectment in this State is not merely possessory action, but one in which title is tried. Hence a vendee of land by title bond, in default of the purchase money, cannot maintain ejectment to recover possession from one who has acquired the legal title of the vendor and forcibly dispossessed him. His remedy is by forcible entry and unlawful detainer. Moring *v.* Ables, 62 Miss. 263.

Possession of land by plaintiff in ejectment for twelve years was sufficient without any paper title, as against a mere intruder who had no paper title or adverse possession, and claimed under no one. Anderson et al. *v.* Moore, 36 So. 520.

Brief of Gwin & Noel:

This was an action of ejectment by M. R. and W. Patterson, against Mrs. H. J. NeSmith, the widow of D. B. NeSmith, deceased, for two lots of land in Tchula, Holmes county, Mississippi. Appellants say that this cause should be reversed, because the plaintiffs failed to prove that plaintiff was the niece of Mrs. NeSmith, deceased. The only witness who testifies on that subject is Wm. R. Patterson, who says that his wife was the niece of Mrs. W. NeSmith, deceased, and that he had heard his wife and Mrs. NeSmith, deceased, say that she had a brother, King, and a sister, who was dead. That his wife's name was Knox before she was married and was a niece of Mrs. NeSmith, deceased. On cross-examination, he said he had been told his wife was the daughter of King, the brother of Mrs. NeSmith, deceased, and on re-examination he was asked how, if her name was Knox, before she was married, she could be the daughter of King? He said he did not know, but knew she was a niece of Mrs. NeSmith, deceased. That he had made a mistake in saying her name was Knox before she was married.

Now, I submit that the kindship is not proven. It is not proven who Mrs. Patterson's father was, or that he is dead, or that Mrs. NeSmith had no children.

Again, it is shown that Mrs. NeSmith died in 1871. If she left issue they inherited. If not, her husband inherited her entire estate. Code 1871, § 1786.

Again, the representatives of the husband are not accountable for the rents, issues and profits of the wife's estate after the expiration of one year from the time of receiving the same.

But we insist that Mrs. H. J. NeSmith is entitled to this entire estate under the will of her husband, and that he acquired whatever title Mrs. Patterson had in the lands by virtue of his purchase under execution sale. It is insisted that that sale was void, but we say the sale was valid and passed the interest of Mrs. Patterson in said lands.

The proceedings on which the judgment was obtained under which the lands in controversy were sold was commenced in a justice court and a judgment there obtained against M. R. Patterson, from which an appeal was taken to the Circuit Court of Holmes county, and M. R. and W. P. Patterson and Stern executed an ap-

peal bond, and the case was tried in the Circuit Court and resulted in a judgment against both principal and sureties on said appeal bond. It is argued that this judgment is void as to Mrs. Patterson; first, because the record does not show that it was for plantation and family supplies, she being a married woman, and, second, it is a personal judgment.

To the first objection we reply, that in a proceeding when the pleadings are oral it is not necessary or possible that the proceedings should show that defendant was married or had a separate estate, or that the action was based on a contract she was authorized to make. When the judgment is rendered the law presumes everything to have been done and proven, and this presumption exists where there is a palpable state of facts which would justify the judgment. Duncan v. McNeil, 31 Miss. 704; Lee v. Bennett, 31 Miss. 119, and is presumed to be correct unless the record shows the contrary.

The record does show that the judgment was based on services which, whether rendered in protection of her *rights* or *property,* was a legal charge, even if it appeared in the record of the proceedings that Mrs. Patterson was a married woman, which it does not, I mean in the case of Gwin v. Patterson. Halliday v. Stone, 55 Miss. 66; Code 1871, §§ 1781, 1783.

The case of Epperson v. Nugent, 57 Miss., announces a principle somewhat analogous to this case. But the presumption is that all facts necessary to authorize the judgment existed (as in fact they did). This judgment on its face was valid and binding. Can it be attacked collaterally? We say it cannot. Cannon v. Cooper, 39 Miss. 780; Pollock v. Brown, 43 Miss. 140; Cason v. Cason, 31 Miss. 587.

We think that it must then be presumed that it was shown at the time in the case of Gwin v. Patterson that Mrs. Patterson had a separate estate and that the act sued on was to enforce her "rights" on a contract she was authorized to make. Was it then void because it was a personal judgment instead of a judgment *in rem?* If an appeal had been taken to the Supreme Court, as was done in the case of Maclin v. Bloom, 54 Miss. 367, it is not a void judgment, but irregular simply. In no personal judgment can anything be done except to issue an execution against the property of defendant. Whether, in a judgment against a married woman,

property can be sold, acquired after the judgment was rendered, seems to be a doubtful question. If it could not, then there appears to be that distinction between the effect of a personal judgment and a judgment *in rem;* but no other distinction can be shown in its effect. Anciently, a personal judgment was something more than a lien upon property of defendant, but now we cannot perceive any distinction as to its effect, save as above indicated. In this case the execution was issued and levied on property which, if Mrs. Patterson had any title to at all, she had acquired before the judgment was rendered, and hence does not come under the exception above indicated (if indeed it is an exception).

In Mallett et al. *v.* Parham, this court says no judgment can be rendered against a married woman so as to touch any other property except her separate estate. This is true, but it is also true that if it were a personal judgment against a married woman or any one else, it, by the very operation of the laws, could reach no other property except her personal estate.

Only such judgments as are absolutely void can be attacked collaterally. 6 How. 106; 8 S. & M. 505; 34 Miss. 68; 37 Miss 185.

But voidable or erroneous judgments are good until set aside. 6 S. & M. 179; 2 Cush. 217; 6 Cush. 409. This judgment was not voidable, but simply irregular. Admitting it can be proven that defendant can be shown to have been a married woman in a collateral attack, when the record does not show she was a married woman.

Is not Mrs. Patterson estopped by the judgment? In the case of Griffith *v.* Clark, 6 Md. 457, a judgment by default had been obtained against a married woman in a suit upon a promissory note, and was enjoined. "The *femme* it was said was not competent to employ counsel, and the contract sued on being void, she was not to be prejudiced by entry of judgment by default against her for non-appearance." In this State, however, she is capable of employing counsel, and the reason failing, the rule would be of no effect. Again, in that case, it was a direct proceeding attacking the judgment; in this it is a collateral attack.

In Morse *v.* Tappan, 3 Gray, 411, a judgment against a married woman adjudged void because she was incapable of contracting.

This case, too, loses its effect here by reason of the fact that a married woman may make a binding contract.

"On the other hand it has been frequently held in Pennsylvania and other States, that when a married woman had executed a mortgage in her own maiden name and a *scire facias* was executed against her in the same name, judgment recovered and the land sold, the purchaser gets a good title and the *femme* cannot allege her coverture in ejectment for the premises against him." Hartman *v.* Ogborn, 54 Pa. 120; Van Metre *v.* Wolf, 27 Iowa, 341; Green *v.* Branton, 1 Dev. Eq. 500; Gambetta *v.* Brock, 41 Cal. 78; Patterson *v.* Frazer, 5 La. An. 581; Elson *v.* Odowd, 40 Ind. 300; Guthrie *v.* Howard, 32 Iowa, 54.

When, however, a married woman is incapable of contracting, a judgment against her is void, or when she confesses judgment, she being incapable of making such confession, it is void.

Bigdon on Estoppel, p. 48, says, if the *femme* have no power to appoint counsel to appear for her, it would be strange if she could be bound by failing to appear, and she could hardly be required to defend in person.

*But the case is different if the husband was joined in the previous suit.* He can engage counsel and is bound to do so or appear in person.

For the reasons above we respectfully ask that the judgment in this case be reversed.

Brief of Hooker & Wilson:

The case will have to be reversed for want of proper proof of heirship of the plaintiffs to Mrs. NeSmith. There was only ·one issue in the lower court, which we ask this court to settle, as it will doubtless end this litigation. This issue was as to the validity of the title of D. B. NeSmith to the land in controversy by virtue of his purchase under the judgment against Mrs. Patterson. She was a married woman at the time of the institution of the suit and rendition of the judgment. The judgment against her was a personal judgment.

The record must show the jurisdictional facts upon which a judgment can be predicated. It must somewhere appear that the contract was one which she was by law authorized to make, and that she was the owner of a separate estate, and everything else

that is necessary under the statute to make a contract binding on her. Dixon *v.* Carey, 51 Miss. 593; Griffin *v.* Ragan, 52 Miss. 78; Magruder *v.* Buck, 56 Miss. 314; Travis *v.* Willis, 55 Miss. 557.

Counsel say that this was a proceeding commenced in the magistrate's court, where pleadings, etc., are oral. That does not abolish the rule. The *judgment* of the magistrate or of the Circuit Court should have shown these facts. Indeed the record should have awarded satisfaction out of her estate, 52 Miss 921; 54 Miss. 365; Code 1871, § 1780, and should not have been personal.

The appellants say that these rules do not apply, because the record does not show that Mrs. Patterson was a married woman. A judgment is but a species of contract and is no more binding on a married woman than her contract. 51 Miss. 593; Freemen on Judgments, §§ 149, 150; 67 Pa. 439; 49 Mo. 152; 66 Mo. 617; 15 La. An. 628.

The same doctrine is laid down in the last section of Bigelow on Estoppel, pp. 47 and 48, *et seq.,* last edition.

In the case of ordinary contract it must be shown by plaintiff that a state of *facts* exist which enables the *femme covert* to contract. When this contract is reduced to judgment, to be conclusive upon her, it must be shown affirmatively of record that these facts existed and were adjudicated and found to be true. This may appear either from the pleadings or from the judgment of the court.


OPINION.—COOPER, J.:

Because the appellee failed to connect herself with the title of the land sued for, the judgment will be reversed.

We are urged to decide a question not presented by the record, as it is said it will be decisive of the controversy.

The recent case of Stadeker *v.* Robinson, 59 Miss. 3, limiting somewhat the previous decisions on the validity of a judgment against a married woman where the record fails to show jurisdictional facts, it is probable, will cover the question involved.

*Judgment reversed.*